Heffernan, J.
The facts in this case are undisputed. Plaintiff is a domestic corporation authorized by law to carry on the business of transmitting messages by telegraph for hire within the United States and elsewhere. It has power to make contracts with railroad companies respecting the use of their facilities, premises and rights of way of such companies.
As a condition precedent to a grant of permission to plaintiff’s employees to enter upon its tracks and rights of way for the purpose of inspecting and maintaining plaintiff’s telegraph lines, the Delaware & Hudson Railroad Corporation (hereinafter referred to as the “railroad”) exacted from plaintiff and plaintiff executed an agreement on February 9, 1938, whereby plaintiff assumed all responsibility for and agreed to release, indemnify and save harmless the railroad from and against any and all claims on account of loss of life *627 or property, or injury or damage to persons including the employees of the plaintiff resulting from or arising from the use of the premises by plaintiff’s employees. Defendant’s intestate, her husband, was an employee of the plaintiff. As a condition precedent to his employment by plaintiff, he signed and entered into a contract with plaintiff on February 15, 1945, the material part of which reads as follows: “ and as a term, or condition of such employment, that in the case of my accidental injury in the course of my employment for the company while traveling or being on the premises or right of way of any such railroad. I will look for compensation solely to The Western Union Telegraph Company’s relief plan, before referred to, of which I have been furnished a copy, and with which I am familiar, or to the Workmen’s Compensation Act, and that in case of my accidental death in the course of my employment for the company while traveling or being on the premises or right of way of any such railroad, my personal representatives will look for compensation solely to the Workmen’s Compensation Act, if any, which may apply in such case, and that no railroad company which the company may have agreed to indemnify against liability for my injury or death shall be liable to me or to my personal representatives for such injury or death, whether or not the same shall be caused by the negligence of such railroad company or its servants, except that in the event that my accidental death shall occur in a State where there is no Workmen’s Compensation Act which shall apply to such death, then and in that event only my personal representatives shall have the right to look to the railroad company upon whose premises or right of way my accidental death shall occur for compensation therefor ”.
On or about July 21,1947, defendant’s intestate was operating a gasoline motorcar upon the tracks of the railroad in the town of Essex, New York, in the course of his employment. He was upon the railroad property by virtue of the contract between the railroad and plaintiff. His gasoline motorcar collided with the gasoline motorcar operated by employees of the railroad upon the same set of tracks, as a result of which defendant’s intestate sustained fatal injuries which resulted in his death on the same day. Decedent left surviving his widow, the defendant, and three minor children as his sole distributees.
On February 26, 1948, defendant instituted an action against ihe railroad in the Supreme Court alleging in her complaint two causes of action arising from the death of her intestate. *628 The first action seeks to recover damages for the alleged wrongful death of her intestate and the second seeks to recover damages for the alleged conscious pain and suffering of her intestate. Each cause of action is predicated upon the negligence of the railroad. Plaintiff is not a party to that action.
After the service of the complaint by defendant upon the railroad, it served upon plaintiff a notice calling upon the plaintiff to save it harmless from any and all loss, damage and expense on account of that action or any judgment recovered therein in accordance with the agreement between the railroad and the plaintiff. Plaintiff then instituted the present suit to enjoin and restrain defendant from the prosecution of her action against the railroad. From a judgment permanently enjoining and restraining her from the prosecution of that action, defendant has come to this court.
On this appeal defendant contends that the agreement between plaintiff and her intestate was void as against the public policy of this State, that there was no consideration for such agreement, and that the agreement by her intestate, insofar as it released the cause of action created by section 130 of the Decedent Estate Law, is void. Respondent asserts that it is clearly entitled to the relief which the court in Special Term granted. We are satisfied that the agreement between plaintiff and defendant’s intestate is void as against the sound public policy of this State. The leading case on the subject is Johnston v. Fargo (184 N. Y. 379). There, the action Avas one for personal injuries allegedly sustained by plaintiff Avhile in the employ of defendant. Upon entering the defendant’s employment the plaintiff executed and delivered to defendant an agreement whereby in consideration of his employment by defendant he assumed all the risks of accident or injury in the course of such employment whether occasioned by the negligence of defendant or any of its members, officers, agents or employees. He further agreed, in case of injury, that he Avould execute and deliver to the defendant a sufficient release of all claims and demands and causes of action arising out of such injury, and he further agreed on behalf of himself, his heirs, executors and administrators to pay the defendant, on demand, any sum which defendant was compelled to pay in consequence of such claim or in defending the same. The Court of Appeals held that the agreement was void as being without consideration and against the public policy of the State. It cited many authorities in support of its conclusion and in its opinion, it said (pp. 384-385): “ Contracts are illegal at common law, *629 as being against public policy, when they are such as to injuriously affect, or subvert, the public interests. (1 Story Eq. Juris. § 260n; Chesterfield v. Janssen, 2 Vesey Sr. 125, 156). If it were true that the interest of the employed, only, would be affected by such contracts as the present one, as it was held by the English court in Griffiths v. Earl of Dudley ([L. R. (9 Q). B. Div.) 357] supra), it would be difficult to defend, upon sound reasoning, the denial of the right to enter into them; but that is not quite true. The theory of their invalidity is in the importance to the state that there shall be no relaxation of the rule of law, which imposes the duty of care on the part of the employer towards the employed. The state is interested in the conservation of the lives and of the healthful vigor of its citizens, and if employers could contract away their responsibility at common law, it would tend to encourage on their part laxity of conduct in, if not an indifference to, the maintenance of proper and reasonable safeguards to human life and limb. The rule of responsibility at common law is as just as it is strict and the interest of the state in its maintenance must be assumed; for its policy has, in recent years, been evidenced in the progressive enactment of many laws, which regulate the employment of children and the hours of work, and impose strict conditions with reference to the safety and healthfulness of the surroundings of the employed, in the factory and in the shop. The employer and the employed, in theory, deal upon equal terms; but, practically, that is not always the case. The artisan, or workman, may be driven by need; or he may be ignorant, or of improvident character. It is, therefore, for the interest of the community that there should be no encouragement for any relaxation on the employer’s part in his duty of reasonable care for the safety of his employes. That freedom of contract may be said to be affected by the denial of the right to make such agreements, is met by the answer that the restriction is but a salutary one, which organized society exacts for the surer protection of its members. While it is true that the individual may be the one, who, directly, is interested in the making of such a contract, indirectly, the state, being concerned for the welfare of all its members, is interested in the maintenance of the rule of liability and in its enforcement by the courts. ’ ’
So far as our research goes that case has never been overruled and has been consistently followed in Kelly v. Central R. R. of New Jersey (178 App. Div. 685), Fried v. New York, New Haven & Hartford R. R. Co. (183 App. Div. 115, affd. *630 230 N. Y. 619), and Mercante v. Highgrade Food Products Corp. (18 N. Y. S. 2d 271). The same rule has been applied in Rowe v. Richards (35 S. D. 201), Johnson v. Richmond & Danville R. R. Co., (86 Va. 975), and Blanton v. Dold (109 Mo. 64). There are many eases in other jurisdictions which involve actions for personal injuries brought by an employee against his employer. In all those cases the courts have held that an agreement allegedly absolving an employer or another party from liability was void for want of consideration and as against public policy.
In. defendant’s first cause of action against the railroad she is suing pursuant to section 130 of the Decedent Estate Law which authorizes a personal representative of a decedent to “ maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent’s death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued. * * * ” '
Section 130 of the Decedent Estate Law creates a right of action unknown to the common law. A cause of action for wrongful death cannot arise until the person’s death actually occurs. The cause of action cannot be considered a property right of the deceased of which he has the power to divest himself. It is a property right belonging solely to his distributees and it accrues to them only upon the wrongful death of the decedent. Defendant’s intestate was not possessed of that right at the time he entered into his contract with plaintiff. He himself could never be possessed of the right to maintain such an action and, therefore, the persons from whom he sought to divest such a property right could not come into possession of it until his wrongful death. The agreement obviously is ineffective as to them. A cause of action for injuries resulting in death prosecuted by an administratrix against a third party is for the benefit, not of dependents as defined by the Workmen’s Compensation Law but of next of kin as defined by sections 133 and 134 of the Decedent Estate Law. The two classes are not invariably nor perhaps commonly the same (Matter of Zirpola v. Casselman, Inc., 237 N. Y. 367; Matter of Battalico v. Knickerbocker Fire Proofing Co., 250 App. Div. 258, motion for leave to appeal denied, 274 N. Y. 641). The right to recover damages for wrongful death under section 130 of the Decedent Estate Law as distinguished from rights under the Workmen’s Compensation Law does not rely upon the dependency of the beneficiaries of the decedent.
*631 Contracts exempting from liability for negligence are not favored by law. They are strictly construed against the party relying on them (17 C. J. S., Contracts, § 262; 56 C. J. S., Master & Servant, § 199). The overwhelming weight of authority is that agreements between employer and employee attempting to exonerate the employer from liability for future negligence whether of himself or his employees or limiting his liability on account of such negligence are void as against public policy (35 Am. Jur., Master & Servant, § 136).
It is there stated (p. 566): “ The argument that freedom of contract is restricted by the denial of the right of an employer to make agreements with his employees restricting or limiting his liability for injuries to the employee is met by the answer that the restriction is only a salutary one, which organized society exacts for the surer protection of its members. While it is true that the individual may be the one who directly is interested in the making of such a contract, indirectly the state, being concerned for the welfare of all its members, is interested in the maintenance of the rule of liability and in its enforcement by the courts. The theory of the invalidity of such contracts is based on the importance to the state that there shall be no relaxation of the rule of law which imposes the duty of care on the part of the employer toward the employed. The state is interested in the conservation of the lives and of the healthy vigor of its citizens, and if employers could contract away their responsibility at common law, it would tend to encourage on their part laxity of conduct in, if not an indifference to, the maintenance of proper and reasonable safeguards to human life and limb. ’ ’
It seems to us that the agreement between plaintiff and defendant’s intestate is clearly without any consideration. That agreement conferred no right on decedent which he did not possess by law. If he sustained injury arising out of and in the course of his employment, he became entitled to compensation under the Workmen’s Compensation Law of the State, and not by virtue of any concession on the part of this plaintiff, so that plaintiff parted with nothing in its agreement with decedent, whereby he was given the right to seek workmen’s compensation.
Plaintiff is relying principally on the following cases to sustain the judgment under review: Wells Fargo & Co. v. Taylor (254 U. S. 175); Western Union Tel. Co. v. Tompa (51 F. 2d 1032), and Barnhart v. American Concrete Steel Co. (227 N. Y. 531).
*632 In onr opinion these cases are distinguishable. In the Taylor case, Taylor was an express messenger of Wells Fargo & Company, a common carrier. He received personal injuries as a result of the derailment of an express car in which he was working and which was a part of the passenger train moving over the railroad. The derailment was caused by the negligence of the company. Taylor instituted an action against the railroad company in a State court and recovered a judgment. The express company instituted a suit against him in equity to enjoin the enforcement of his judgment on the ground that a contract between the express company and the railroad company provided that the express company was to assume all the risks for damage to its agents and employees while in its business on the trains or property of the railroad company and to save the railroad company from all damages. It was also shown that Taylor had entered into an agreement with the express company wherein it was recited that he had full knowledge of the work required and he stipulated as a condition of his employment that neither the express company nor the railroad company should be liable for any injury which he might receive while on the railroad company’s trains as a messenger whether caused by the negligence of the railroad company or otherwise. The Supreme Court issued a decree restraining Taylor from the enforcement of his judgment against the railroad company.
In the Tompa case it appeared that Western Union had employed the defendant to work as a cook on one of its work trains under an agreement of employment. While she was so employed on a train operated over the right of way of New York Central Railroad Company, she was injured. She began an action in the Supreme Court of this State against the railroad company to recover damages for her injury. The railroad company notified the Western Union that it would look to it for reimbursement for all damages and expense which it might sustain as a result of the suit. Western Union thereupon brought an action in the Federal court to restrain the defendant from proceeding with her action against the railroad company. The United States Court of Appeals, Second Circuit, enjoined the prosecution of Tompa’s action.
These two cases, while persuasive, are not binding upon us. They are both in conflict with Johnston v. Fargo (184 N. Y. 379, supra). In addition to that, the action in each case was by the individual that was injured and not by the legal representative.
*633 The Barnhart case is clearly not in point. In that case the action was brought to recover damages alleged to have been sustained by the death of plaintiff’s intestate. At the time of his death he was a resident of New Jersey and in the employ of defendant, a New Jersey corporation. The contract of employment was entered into in that State. In its opinion the Court of Appeals said:
“ The New Jersey Workmen’s Compensation Act (Laws of 1911, chap. 95, as amended) provides that when an employer and employee shall, by agreement, either express or implied, accept the provisions of section 2 of the act, compensation for personal injuries to or for the death of such employee by accident arising out of or in the course of his employment, shall be made by the employer without regard to the negligence of the employee according to certain schedules set forth (Par. 7, sec. 2); that such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof, than that provided in section 2 of the act and an acceptance of all the provisions of section 2 shall bind the employee himself, and for compensation for his death shall bind his personal representatives, his widow and next of kin, as well as the employer (Par. 8); that every contract of hiring made subsequent to the time provided for any act to take effect shall be presumed to have been made with reference to the provisions of section 2, and unless there be as a part of such contract an express statement in writing prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of section 2 are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section 2 and have agreed to be bound thereby.
“ There is a fundamental difference between the Workmen’s Compensation Act of New Jersey and the Workmen’s Compensation Act of New York. This difference it is important to keep in mind. Under one statute the scheme of compensation is optional, while in the other it is mandatory.”
The court also stated that in view of the provisions of the New Jersey Workmen’s Compensation Act there is no analogy between the case which it was discussing and the case of Johnston v. Fargo (184 N. Y. 379, supra).
The plaintiff makes much of the fact that defendant had been receiving death benefits under the Workmen’s Compensation Law. That argument has no bearing upon the merits of this action or of the action against the railroad company. The *634 Workmen’s Compensation Law specifically provides that neither the employee nor in case of his death his dependents need elect whether to take compensation under the Workmen’s Compensation Law or to pursue their remedy against a third party, hut may take such compensation and at any time, either prior thereto or within six months after award of compensation, pursue their remedy against a third party.
The judgment appealed from should be reversed and the complaint dismissed, with costs to appellant.
Foster, P. J., Deyo and Bergan, JJ., concur; Brewster, J. dissents.
Judgment appealed from reversed on the law and the complaint dismissed, with costs to appellant. This court affirms the facts implicit in the judgment.